IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY GENE MARSHALL, )<br>)<br>Plaintiff, )<br>)<br>) CIV-12-09-HE<br>v. )<br>)<br>CHARLES LEE, et al., )<br>)<br>Defendants. ) | |

REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983. In his Complaint filed January 3, 2012, Plaintiff seeks damages for alleged constitutional deprivations from eleven state correctional officials assigned to the Oklahoma State Reformatory ("OSR"), Granite, Oklahoma, and the administrative office of the Oklahoma Department of Corrections ("ODOC") located in Oklahoma City, Oklahoma. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). Defendants Armstrong, Bear, Goodson, Haynes, Jones, Morton, and Rudek have moved to dismiss or, alternatively, for summary judgment as to Plaintiff's claims against them. (Doc. # 24). Plaintiff has responded to the dispositive motion. (Doc. # 27). Defendants Armstrong, Bear, Goodson, Haynes, Jones, Morton, and Rudek have also caused the filing of a special report

1

consistent with Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978), and the Order entered January 19, 2012. (Docs. # 8, 25). For the following reasons, it is recommended that these Defendants' Motion, construed as a motion for summary judgment, be granted.

I. Background and Complaint

Plaintiff is incarcerated in the custody of ODOC serving a life sentence for his conviction for Robbery with a Dangerous Weapon after multiple prior felony convictions and consecutive terms of imprisonment of life and life without parole for his respective convictions for Robbery in the First Degree and Murder in the First Degree, all after multiple prior felony convictions. Special Report (Doc. # 25), Ex. 1. He has been confined at OSR beginning November 24, 2009. Special Report, Ex. 1.

In his Complaint filed January 3, 2012, Plaintiff alleges that he filed a 42 U.S.C. §1983 action against Defendants Rudek and Bear in May 2011. Taking judicial notice of the Court's records, a § 1983 action was filed by Plaintiff in this Court on May 23, 2011, and in his Complaint Plaintiff named Defendants Bear, Morton, and Rudek. Marshall v. Bear, Case No. CIV-11-575-HE. That action remains pending.

In his first claim, Plaintiff alleges that on August 24, 2011, "at 9:45 a.m." he handed to Defendant Bethea, the OSR law library supervisor, service papers he had completed so that the papers could be mailed to this Court for filing in his pending § 1983 action. Complaint, at 4. In compliance with OSR rules, Plaintiff alleges he left the envelope containing the service papers open for inspection by OSR correctional officials. Plaintiff alleges that Defendant Bethea's action of inspecting and reading his outgoing legal mail

violated "his right to privacy and free speech as guaranteed by the 1st Amendment of the United States Constitution." He refers to "Ground no. 4" in his previously-filed § 1983 action. Id.

In his second claim, Plaintiff alleges that Defendant Bethea picked up Plaintiff's legal mail, inspected the outgoing legal mail, and then informed Defendants Bear and Rudek of the contents of the mail "who then initiated the action to fabricate the misconduct offense against plaintiff in retaliation . . . of plaintiff's First Amendment right to redress his grievances in a court of law . . . ." Complaint, at 5. With respect to his retaliation claim, Plaintiff contends he "recieved [sic] information the misbehavior misconduct was dismissed against [his cellmate] and directed at plaintiff because plaintiff filed a legal lawsuit against staff members." Complaint, at 15. Plaintiff alleges that he submitted a Request to Staff form to Defendant Goodson on September 13, 2011, asserting that the misconduct was "fabricated" in retaliation for his previous § 1983 action against Defendants Bear, Rudek, and Morton. Complaint, at 13, 15-16.

In his third claim, Plaintiff alleges that Defendant Bethea did not mail out his "legal mail . . . until after 8-31-11 well-over one (1) week after taking possession of the documents or mail." Complaint, at 5-6. He alleges Defendant Bethea "held up mailing the legal mail to inform defendant Carl Bear that a civil action proceeding was being brought against him and [OSR] Warden James Rudek" and that Defendant Bethea thereby "caused plaintiff to be retaliated against by recieving [sic] the false misbehavior misconduct in violation of" his First Amendment rights. Complaint, at 6.

In his fourth claim, Plaintiff alleges that on August 24, 2011, at 5:10 p.m. Defendants Lee, Haynes, Armstrong, and Dennis "did fabricate conjointly" a false offense report charging Plaintiff with possession of drug paraphernalia. Complaint, at 6. Further, Plaintiff alleges various procedural and evidentiary deficiencies with respect to the disciplinary hearing and misconduct charge for possession of contraband, including allegations that "all of the said named defendants knowingly and intentionally with-held [sic] exculpatory evidence . . . ." and that insufficient evidence was presented to support the finding of guilt for the misconduct. Complaint, at 16.

In his fifth claim, Plaintiff alleges the offense report was served on him by Defendant Ellis on September 12, 2011, and that Defendant Ellis refused to provide Plaintiff with a copy of a "drug test report . . . which constitutes a violation of plaintiff's due process rights as guaranteed by the 5th and 14th Amendments of the United States Constitution." Complaint, at 9. Plaintiff alleges that this "evidence . . . would prove his actual innocence . . . ." Complaint, at 13. Plaintiff further asserts that evidence presented in support of the misconduct offense was not sufficient to show he was guilty of the offense because "two (2) individuals lived in the cell or room at the time of the shakedown" and the "ink pen's were found in a common area the desk or table utilized by both inmates Lewis . . . and plaintiff Marshall." Complaint, at 15.

In a fifth claim, Plaintiff alleges that the statement of "the two (2) white correctional officers against the statement of an afro-american claiming innocence . . . is <u>self-serving</u> and not credible. . . ." Complaint, at 10. Plaintiff alleges that Defendant Ellis "conspired with

4

[Defendants Lee and Dennis] and others to fabricate evidence to support the false misconduct report . . . ." Complaint, at 11. Plaintiff admits he did not appeal the misconduct and asserts that "to do so was a 'futile' process." Complaint, at 14. However, Plaintiff asserts that he submitted a grievance "concerning the failure of the defendants all herein named to comply with due process as set forth in paragraph no. 1 through 45." Complaint, at 17.

In his sixth claim, Plaintiff alleges that Defendant Goodson, who presided at the disciplinary hearing on the charge of possession of drug paraphernalia, was ""not impartial and biased and was a knowing and willing participant in the conspiracy to retaliate against plaintiff in violation of his 1st Amendment right to redress his grievances in a court of law." Complaint, at 11-12. Plaintiff also alleges that Defendants Goodson and Ellis "know that no shakedown of cell-D-3-11 occurred on 8-24-11 at 5:10 p.m. evening-time." Complaint, at 16.

In a seventh claim, Plaintiff alleges that Defendant Bear "who is not the warden but is the warden's assistant responded to and signed his name in denial of plaintiff's constitutional and statutory rights [and ] in violation of Oklahoma Department of Corrections policy." Plaintiff alleges that Defendants Rudek, Morton, and Jones "who are defendant [Bear's] supervisor[s] condoned and acquiesced in the actions of defendant [Bear] in violation of plaintiff's right to due process guaranteed by the 14th Amendment of the United States Constitution and Title 57 Okla. Stats. Supp. Sec. 564." Complaint, at 17.

In a final eighth claim, Plaintiff alleges that Defendant Bear imposed grievance restrictions upon Plaintiff "for the purpose to deny plaintiff due process and carry out the purpose for the retaliation . . . ." Complaint, at 17-18.

II. Standard of Review

In support of their dispositive motion, Defendants Armstrong, Bear, Goodson, Haynes, Jones, Morton, and Rudek have relied on materials outside of the pleadings, including affidavits and other evidentiary documents included in the Special Report. Plaintiff was advised of his obligations under Fed. R. Civ. P.56(c) and LCvR 56.1(c) in responding to these Defendants' dispositive motion, and in responding to the motion Plaintiff has relied on materials outside of the pleadings. Therefore, the motion filed by Defendants Armstrong, Bear, Goodson, Haynes, Jones, Morton, and Rudek will be considered a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

III. Heck

Plaintiff alleges in the Complaint that he was deprived of his rights under the Due Process Clause of the United States Constitution, in part, because he was found guilty of an institutional misconduct offense, possession of drug paraphernalia, without sufficient evidence. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court recognized that damages may not be recovered in a 42 U.S.C. § 1983 action "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff first proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 487. This rule applies to prison disciplinary convictions. Edwards v. Balisok, 520 U.S.641, 643 (1997).

Ordinarily, the claims of inmates like Plaintiff who seek damages from correctional officials for alleged procedural or substantive due process deprivations, including insufficiency of evidence, failure to provide exculpatory evidence, or misconduct charges based on retaliatory motives or false testimony, would be dismissed without prejudice as barred by Heck unless the inmate shows that the misconduct has been reversed or vacated.

In Muhammad v. Close, 540 U.S. 749 (2004)(*per curiam*), the Supreme Court

recognized that "*Heck*'s requirement to resort to state litigation and federal habeas before §1983 is not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." Id. at 750 (footnote omitted). In Muhammad, the prisoner brought a § 1983 action after he was segregated prior to a disciplinary hearing in which he was acquitted of the misconduct offense and thus did not forfeit earned credits. Id. at 752. In that case, where the inmate did not challenge the underlying disciplinary conviction, the Court found that the inmate "raised no claim on which habeas relief could have been granted on any recognized theory, with the consequence that *Heck*'s favorable termination requirement was inapplicable." Id. at 755.

In this case, Plaintiff does challenge the validity of his disciplinary conviction, and thus the Supreme Court's decision in Muhammad does not bar the application of Heck to Plaintiff's § 1983 claims. Nevertheless, Plaintiff admits that he is serving a sentence of life imprisonment and he is not receiving earned credits because he must serve 85% of the sentence under Oklahoma law before his sentence may be reduced by earned credits.[1]

As the Tenth Circuit Court of Appeals recently stated, "*Muhammad* left open the possibility that *Heck* might not apply when a habeas remedy is unavailable." Harrison v. Morton, 2012 WL 3104880, * 3 (10th Cir. Aug. 1, 2012)(unpublished order)(citing Muhammad, 540 U.S. at 752 n. 2). In Harrison, the plaintiff-prisoner, like Plaintiff, was ineligible to earn good time credits under Oklahoma law and the appellate court reasoned that

---

[1]See Okla. Stat. tit. 21, § 13.1(requiring certain inmates to serve 85% of their sentences before becoming eligible to earn good time credits).

the prisoner "likely would not be able to file a habeas petition challenging his disciplinary conviction" because the § 2241 habeas remedy is available only to challenge prison disciplinary proceedings when those proceedings affect the fact or duration of the prisoner's custody, "such as when a prisoner is deprived of earned credits." Id. The court in Harrison did not reach the issue of Heck's applicability, however, because the court found that even if Heck did not bar the prisoner's § 1983 claims he could not demonstrate that his constitutional rights were violated. Id. In this case, the Court should likewise find that it is not necessary to reach the issue of Heck's applicability because the uncontroverted evidence shows Plaintiff has failed to exhaust available administrative remedies concerning any of the claims asserted in the Complaint.

IV. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff files an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). Exhaustion of administrative remedies is mandatory under the PLRA. Booth v. Churner, 532 U.S. 731, 741 (2001). The PLRA's exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). To properly exhaust administrative remedies, Plaintiff must "us[e] all

steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted).

In ODOC's well-established grievance policy, OP-090124, ODOC has established a "four-step process for administrative exhaustion of prisoner claims. Initially, a prisoner must seek to resolve any complaint by informally raising the matter with an appropriate staff member." Little v. Jones, 607 F.3d 1245, 1249 (10th Cir. 2010). "If the matter is not resolved informally, the prisoner must submit an RTS [Request to Staff]." Id. "If the matter still remains unresolved, the prisoner may file a Grievance Report Form ('grievance') with the reviewing authority, which is usually the prison's warden." Id. "Finally, a prisoner may appeal the warden's decision to the Administrative Review Authority ('ARA')." Id. According to ODOC's grievance policy, "'[t]he ruling of the [ARA] . . . is final and [concludes] the internal administrative remedy available to the inmate. . . .'" Id. (quoting ODOC Inmate/Offender Grievance Process, § VII.D.1).   See Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority."), cert. denied, __ U.S. __, 131 S.Ct. 1691 (2011).

On April 25, 2011, Plaintiff was advised in a memorandum authored by Defendant OSR Warden's Assistant Bear that Plaintiff's grievance was being returned to him unanswered because Plaintiff had previously been placed on grievance restriction for a twelve-month period beginning October 18, 2010, and Plaintiff did not provide the proper

documentation with his grievance as required by ODOC policy OP-090124. Special Report (Doc. # 25), Ex. 32.  On April 26, 2011, Plaintiff was again advised by OSR Warden's Assistant Bear that a grievance he submitted was being returned unanswered because Plaintiff had failed to comply with the requirements of DOC policy OP-090124 for submission of a grievance while on grievance restriction. Special Report, Ex. 33. Due to his repeated noncompliance with DOC policies, Plaintiff was advised by Mr. Bear that he was "being placed on a twelve-month Grievance Restriction to be effective beginning April 26, 2011." Id.

ODOC has instituted a policy governing the submission of grievances by an inmate placed on grievance restriction. Special Report (Doc. # 25), Ex. 29.  The policy requires that the inmate submit additional information with each grievance, and if the inmate fails to comply with the requirements for submission the grievance will be returned to the inmate for correction with written reasons for the action. Id.

It is undisputed that Defendants Haynes, Armstrong, Goodson, Bear, and Rudek are OSR officials and that Defendants Morton and Jones are ODOC officials.  In an incident report authored by Defendant OSR official Lee, Mr. Lee stated that on August 24, 2011, "while I was shaking down [the cell D-3-11] the K-9 entered the cell and hit on or around the desk or table in the cell.  Through the process of [elimination] we found that the ink pen on the desk had a removed core and [had] been turned into a pipe." Special Report, Ex. 2. Defendant OSR official Haynes authored an incident report dated August 26, 2011, in which Mr. Haynes stated that he performed a "Nik chemical test" on the ink pen barrel and the "Nik

11

test was positive for THC." Special Report, Ex. 5. Defendant OSR official Armstrong stated in an incident report dated August 26, 2011, that he observed Mr. Haynes conduct a chemical test on an ink pen barrel and that the "Nik test was positive for THC." Special Report, Ex. 6. On September 8, 2011, Defendant OSR official Dennis stated on the incident report that the "[i]tem was tested by Sgt. Haynes and had positive test for THC." Special Report, Ex. 2.

An offense report charging Petitioner with the offense of possession of drug paraphernalia was authored by Defendant Lee on August 24, 2011, and referred for investigation by Defendant Dennis on the same date. Special Report, Ex. 4. The offense report was delivered to Plaintiff on September 12, 2011. Id. In an investigator's report dated September 12, 2011, Defendant OSR official Ellis stated that Plaintiff requested a copy of a "drug test" but that the request was denied because Plaintiff "[h]as two witness incident reports." Special Report, Ex. 7. In a disciplinary hearing conducted on September 23, 2011, Plaintiff was found guilty of the offense of possession/manufacture contraband. Special Report, Ex. 11. The punishment imposed for the misconduct conviction included confinement to the prison's disciplinary segregation unit for 30 days and reduction of his classification level to level one for 90 days. Id. The disciplinary finding of guilt and punishment were affirmed by the head of the facility. Id. Plaintiff did not appeal the disposition of the misconduct charge to the ARA.

On September 22, 2011, Plaintiff submitted a grievance to Defendant OSR Warden Rudek in which he alleged that the misconduct charge was the result of retaliatory motives

and that he was innocent of the misconduct offense.[2] Special Report, Ex. 27. On September 22, 2011, OSR Warden's Assistant Bear advised Plaintiff in a memorandum that his grievance was being returned "unanswered" because Plaintiff was placed on grievance restriction on April 26, 2011, for a twelve-month period and he did not include the "proper documentation as outlined in [DOC regulation] OP-090124" with his grievance. Because Plaintiff had submitted that grievance and a second grievance "without following the above-mentioned policy," Mr. Bear advised Plaintiff he was again "being placed on a twelve-month Grievance Restriction to be effective beginning September 22, 2011." Special Report, Ex. 28. Plaintiff did not correct and resubmit the grievance. Plaintiff did not file a grievance regarding the timeliness of his legal mail or file a grievance concerning any of the remaining issues raised in his Complaint.

Defendants Armstrong, Bear, Goodson, Haynes, Jones, Morton, and Rudek seek judgment on the basis of Plaintiff's failure to exhaust available administrative remedies.[3] Having asserted the affirmative defense of nonexhaustion, Defendants bear the burden of proof. See Jones v. Bock, 549 U.S. 199, 215-216 (2007)(failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir.

---

[2]Plaintiff also vaguely asserted in the grievance that Defendant Ellis had "refused to provide appropriate documentation" during investigation of the misconduct, although he did not clearly assert what "documentation" Defendant Ellis failed to provide. Special Report, Ex. 27. This vague statement was not adequate to put prison officials on notice of any other claim asserted in the Complaint.

[3]Because nonexhaustion is an affirmative defense, Defendants' remaining arguments will not be addressed. See Howard v. Waide, 534 F.3d 1227, 1244 (10th Cir. 2008).

2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."). Defendants must therefore demonstrate the absence of a disputed material fact on the issue of exhaustion. See Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). If Defendants satisfy this burden, Plaintiff would incur the obligation to "demonstrate with specificity the existence of a disputed material fact. If the [P]laintiff fails to make such a showing, the affirmative defense bars his claim[s], and the [Defendants are] then entitled to summary judgment as a matter of law." Id.

In response to the dispositive motion, Plaintiff asserts that he submitted a "grievance" without further description and that he "appealed to Oklahoma Department of Corrections, A.R.A. defendant Debbie Morton." Plaintiff's Response, at 7. He refers to an exhibit attached to his responsive pleading. In this exhibit, Defendant ODOC ARA Morton informed Plaintiff that his grievance/correspondence received by the ODOC ARA on September 29, 2011, was being returned unanswered because "[y]ou cannot appeal a non response. You must act in accordance with OP-090124." Plaintiff's Response, Ex. 3.

There is no dispute that at the time Plaintiff submitted his grievance to OSR correctional officials on September 22, 2011, he was subject to grievance restrictions imposed by OSR officials under ODOC regulations. These grievance restriction regulations require the inmate to "submit a duly verified affidavit, made under penalty of discipline for lying to staff, attached to the grievance, stating that all contents of the grievance are true and correct to the best of the offender's knowledge." Motion to Dismiss/Motion for Summary

14

Judgment, Ex. 2 (DOC OP-090124 § IX(B)(2), effective May 24, 2011). The affidavit must also contain a list of each grievance previously submitted by the offender within the preceding 12 months. Id.

There is no dispute that Plaintiff was notified by Defendant OSR Warden's Assistant Bear, OSR Warden's Assistant, that his grievance was returned to Plaintiff unanswered because of Plaintiff's noncompliance with the grievance restriction regulations. Although Plaintiff contends that exhaustion of administrative remedies concerning his claims was futile, there is no futility exception to the PLRA's exhaustion requirement. Exhaustion of administrative remedies is required even when the administrative process does not afford the type of relief sought by the prisoner. See Booth, 532 U.S. at 741 n. 6.

The uncontroverted record shows that Plaintiff began the administrative review process for his claim that the misconduct charge was fabricated due to retaliatory motives. However, Plaintiff did not complete the administrative review process required for ODOC inmates. Plaintiff submitted a grievance to OSR Warden Rudek, and the grievance was returned to him unanswered with the advice that the grievance did not comply with ODOC's grievance restriction policy. See Little, 607 F.3d at 1250 (recognizing that the grievance procedure "expressly grants the warden the power to return the grievance unanswered for proper completion when a prisoner's grievance contains a procedural defect")(quotation omitted). Rather than correct the deficiencies in the grievance after he received notice the grievance was insufficient, Plaintiff appealed to the ARA. The ARA returned the grievance appeal unanswered because Plaintiff had improperly attempted to appeal a non-response to

his grievance.

"An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). The grievance process established by ODOC required Plaintiff to comply with the policy's four-step grievance process and the policy's additional grievance-restriction requirements. "Once notified of deficiencies at the formal grievance stage, [Plaintiff] chose not to avail himself of the opportunity to cure them, and he "may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them." Thomas, 609 F.3d at 1118 (quotation omitted).

Additionally, Plaintiff did not submit any grievances with respect to his remaining claims asserted in his Complaint. A prison's regulations define the steps a prisoner must take to exhaust administrative remedies, and a prisoner "may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." Little, 607 F.3d at 1249. Because Plaintiff has failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) with respect to any of the claims asserted in his Complaint, Defendants Armstrong, Bear, Goodson, Haynes, Jones, Morton, and Rudek's Motion for Summary Judgment on this ground should be granted.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants Armstrong, Bear,

Goodson, Haynes, Jones, Morton, and Rudek's Motion for Summary Judgment (Doc. # 24) be GRANTED and that judgment issue in favor of Defendants Armstrong, Bear, Goodson, Haynes, Jones, Morton, and Rudek and against the Plaintiff due to Plaintiff's failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by September 13th, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 24th day of August, 2012.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE