IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BILLY MARSHALL,                    )
                                   )
            Plaintiff,             )
                                   )
                                   )        CIV-12-9-HE
v.                                 )
                                   )
CHARLES LEE, et al.,               )
                                   )
            Defendants.            )

SUPPLEMENTAL REPORT  AND  RECOMMENDATION

In this 42 U.S.C. § 1983 action, Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, seeks damages for alleged constitutional deprivations from eleven state correctional officials assigned to the Oklahoma State Reformatory ("OSR") and the administrative office of the Oklahoma Department of Corrections ("ODOC").  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

Before the undersigned is the Motion to Dismiss or in the alternative Motion for Summary Judgment filed by Defendants Bethea, Dennis, Ellis, and Lee (Doc. # 35).[1] On

---

[1]The Motion for Summary Judgment by Defendants Armstrong, Bear, Goodson, Haynes, Jones, Morton, and Rudek was previously granted on the basis of Plaintiff's failure to exhaust available administrative remedies concerning his claims against these Defendants. Order (Doc. #38).

1

August 29, 2012, the undersigned entered an Order advising Plaintiff of his opportunity to respond to the Motion filed by Defendants Bethea, Dennis, Ellis, and Lee under Fed.R.Civ.P. 12 and 56 and advising Plaintiff that his failure to respond to the dispositive Motion could result in a confession of the action pursuant to Local Civil Rules of procedure (Doc. # 26). Plaintiff was given until September 19th, 2012, to file his response.  To this date, Plaintiff has not responded or sought an extension of time to do so.  For the following reasons, it is recommended that Defendants Bethea, Dennis, Ellis, and Lee's Motion for Summary Judgment be granted and that judgment issue in favor of these Defendants and against the Plaintiff.

I. <u>Background and Plaintiff's Claims</u>

Plaintiff is incarcerated in the custody of ODOC serving a life sentence for his conviction for Robbery with a Dangerous Weapon after multiple prior felony convictions and consecutive terms of imprisonment of life and life without parole for his respective convictions for Robbery in the First Degree and Murder in the First Degree, all after multiple prior felony convictions. Special Report (Doc. # 25), Ex. 1.   He has been confined at OSR since November 24, 2009. Special Report, Ex. 1.

In his Complaint filed January 3, 2012, Plaintiff alleges that he filed a 42 U.S.C. §1983 action against Defendants Rudek and Bear in May 2011.  Taking judicial notice of the Court's records, a  § 1983 action was filed by Plaintiff in this Court on May 23, 2011, and in his Complaint Plaintiff named Defendants Bear, Morton, and Rudek.  <u>Marshall v. Bear</u>, Case No. CIV-11-575-HE.  That action remains pending.

2

In his first claim, Plaintiff alleges that on August 24, 2011, "at 9:45 a.m." he handed to Defendant Bethea, the OSR law library supervisor, service papers he had completed so that the papers could be mailed to this Court for filing in his pending § 1983 action. Complaint, at 4.  In order to comply with OSR rules, Plaintiff alleges he left the envelope containing the service papers open for inspection by OSR correctional officials.  Plaintiff alleges that Defendant Bethea's action of inspecting and reading his outgoing legal mail violated "his right to privacy and free speech as guaranteed by the 1st Amendment of the United States Constitution." He refers to "Ground no. 4" in his previously-filed § 1983 action.  Id.

In his second claim, Plaintiff alleges that Defendant Bethea picked up Plaintiff's legal mail, inspected the outgoing legal mail, and then informed Defendants Bear and Rudek of the contents of the mail "who then initiated the action to fabricate the misconduct offense against plaintiff in retaliation . . . of plaintiff's First Amendment right to redress his grievances in a court of law . . . ." Complaint, at 5.  With respect to his retaliation claim, Plaintiff contends he "recieved [sic] information the misbehavior misconduct was dismissed against [his cellmate] and directed at plaintiff because plaintiff filed a legal lawsuit against staff members." Complaint, at 15.  Plaintiff alleges that he submitted a Request to Staff form to Defendant Goodson on September 13, 2011, asserting that the misconduct was "fabricated" in retaliation for his previous § 1983 action against Defendants Bear, Rudek, and Morton.  Complaint, at 13, 15-16.

In his third claim, Plaintiff alleges that Defendant Bethea did not mail out his "legal

3

mail . . . until after 8-31-11 well-over one (1) week after taking possession of the documents or mail." Complaint, at 5-6.  He alleges Defendant Bethea "held up mailing the legal mail to inform defendant Carl Bear that a civil action proceeding was being brought against him and [OSR] Warden James Rudek" and that Defendant Bethea thereby "caused plaintiff to be retaliated against by recieving [sic] the false misbehavior misconduct in violation of" his First Amendment rights. Complaint, at 6.

In his fourth claim, Plaintiff alleges that on August 24, 2011, at 5:10 p.m. Defendants Lee, Haynes, Armstrong, and Dennis "did fabricate conjointly" a false offense report charging Plaintiff with possession of drug paraphernalia. Complaint, at 6.  Further, Plaintiff alleges various procedural and evidentiary deficiencies with respect to the disciplinary hearing and misconduct charge for possession of contraband, including allegations that "all of the said named defendants knowingly and intentionally with-held [sic] exculpatory evidence . . . ." and that insufficient evidence was presented to support the finding of guilt for the misconduct. Complaint, at 16.

In his fifth claim, Plaintiff alleges the offense report was served on him by Defendant Ellis on September 12, 2011, and that Defendant Ellis refused to provide Plaintiff with a copy of a "drug test report . . . which constitutes a violation of plaintiff's due process rights as guaranteed by the 5th and 14th Amendments of the United States Constitution." Complaint, at 9.  Plaintiff alleges that this  "evidence . . . would prove his actual innocence . . . ." Complaint, at 13.  Plaintiff further asserts that evidence presented in support of the misconduct offense was not sufficient to show he was guilty of the offense because "two (2)

individuals lived in the cell or room at the time of the shakedown" and the "ink pen's were found in a common area the desk or table utilized by both inmates Lewis . . . and plaintiff Marshall." Complaint, at 15.

In a sixth claim, Plaintiff alleges that the statement of "the two (2) white correctional officers against the statement of an afro-american claiming innocence . . . is <u>self-serving</u> and not credible. . . ." Complaint, at 10.  Plaintiff alleges that Defendant Ellis "conspired with [Defendants Lee and Dennis] and others to fabricate evidence to support the false misconduct report . . . ." Complaint, at 11. Plaintiff admits he did not appeal the misconduct and asserts that "to do so was a 'futile' process." Complaint, at 14.  However, Plaintiff asserts that he submitted a grievance "concerning the failure of the defendants all herein named to comply with due process as set forth in paragraph no. 1 through 45." Complaint, at 17.

In his seventh claim, Plaintiff alleges that Defendant Goodson, who presided at the disciplinary hearing on the charge of possession of drug paraphernalia, was "not impartial and biased and was a knowing and willing participant in the conspiracy to retaliate against plaintiff in violation of his 1st Amendment right to redress his grievances in a court of law." Complaint, at 11-12.  Plaintiff also alleges that Defendants Goodson and Ellis "know that no shakedown of cell-D-3-11 occurred on 8-24-11 at 5:10 p.m. evening-time." Complaint, at 16.

In an eighth claim, Plaintiff alleges that Defendant Bear "who is not the warden but is the warden's assistant responded to and signed his name in denial of plaintiff's constitutional and statutory rights [and ] in violation of Oklahoma Department of Corrections policy."  Plaintiff alleges that Defendants Rudek, Morton, and Jones "who are defendant

[Bear's] supervisor[s] condoned and acquiesced in the actions of defendant [Bear] in violation of plaintiff's right to due process guaranteed by the 14th Amendment of the United States Constitution and Title 57 Okla. Stats. Supp. Sec. 564." Complaint, at 17.

In his final claim, Plaintiff alleges that Defendant Bear imposed grievance restrictions upon Plaintiff "for the purpose to deny plaintiff due process and carry out the purpose for the retaliation . . . ." Complaint, at 17-18.

II. Standard of Review

Although Defendants Bethea, Dennis, Ellis, and Lee have moved alternatively for either dismissal under Fed.R.Civ.P. 12(b)(6) or for summary judgment under Fed.R.Civ.P. 56(a), in support of their Motion Defendants have relied on documentary evidence outside of the pleadings, including affidavits. Plaintiff was advised of his obligations under Fed. R. Civ. P.56(c) and LCvR 56.1(c) in responding to these Defendants' Motion.  In resolving the Motion, the undersigned has considered matters outside of the pleadings and therefore will proceed to review Plaintiff's claims under the governing summary judgment standard, unless otherwise indicated.  Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court views the evidence and inferences drawn from the record in the light most favorable to the nonmoving party.  Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmoving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).  Rather, the moving party initially must only show "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324.  The nonmoving party "may not rest upon mere allegation[s]" in his or her pleading to satisfy this requirement. Anderson, 477 U.S. at 256.  Under Rule 56, the nonmoving party must respond by going "beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

III. Material, Undisputed Facts

Plaintiff has not specifically disputed the statement of material, undisputed facts set forth in Defendants Bethea, Dennis, Ellis, and Lee's Motion for Summary Judgment. Therefore, the following facts are deemed material, undisputed facts for the purpose of resolving the Motion:

1. Plaintiff was charged with a misconduct at OSR for possession of drug paraphernalia on

September 12, 2011, and found guilty of the charge on September 25, 2011.

2.   In order to exhaust an Oklahoma inmate's administrative remedies as to a misconduct conviction, the inmate in ODOC custody must file a timely, procedurally-compliant appeal to the warden of the facility where he or she is confined.  The inmate must also file a timely, procedurally-compliant appeal to ODOC's Administrative Review Authority ("ARA").

3.   Plaintiff did not appeal the disposition of the misconduct charge.

4.   In order to exhaust available administrative remedies concerning other conditions of an Oklahoma inmate's confinement, the inmate in ODOC custody must: (1) submit a timely, procedurally-compliant Request to Staff ("RTS"); (2) submit a timely, procedurally-compliant grievance; and (3) submit a timely, procedurally-compliant grievance appeal.  An inmate has only exhausted all available administrative remedies upon receiving a final decision from ODOC's ARA or the ODOC's Medical Services administrative office.

5.   Inmates who abuse the ODOC grievance process are subject to grievance restrictions.  When an inmate is placed on grievance restriction, additional requirements must be satisfied in order to participate in the grievance process.  An inmate placed on grievance restriction is required to list all previous grievances filed by the inmate, state the disposition of each of those grievances, and seek permission to file a new grievance.

6.   On September 22, 2011, Plaintiff filed a grievance alleging that the misconduct charge was the result of retaliation.  The grievance was returned unanswered, and Plaintiff did not correct the deficiencies or resubmit the grievance.

7.   Plaintiff did not file a grievance regarding the timeliness of his legal mail.

8

8. According to ODOC records, Plaintiff submitted one grievance concerning issues raised in his Complaint.  The grievance was not properly exhausted.

IV. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), enacted in 1996, requires a prisoner to exhaust his administrative remedies prior to filing a lawsuit in federal court challenging prison conditions under 42 U.S.C. § 1983 or any other Federal law. 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This mandatory exhaustion requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002).  To properly exhaust administrative remedies, Plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted).

Adopting by reference the arguments presented in the previous Motion filed by Defendants Armstrong, Bear, Goodson, Haynes, Jones, Morton, and Rudek seeking judgment on the basis of Plaintiff's failure to exhaust available administrative remedies, Defendants Bethea, Dennis, Ellis, and Lee also seek  judgment on the basis of Plaintiff's

failure to exhaust available administrative remedies.[2] Having asserted the affirmative defense of nonexhaustion, Defendants bear the burden of proof. See Jones, 549 U.S. at 215-216 (failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."). Defendants must therefore demonstrate the absence of a disputed, material fact on the issue of exhaustion.  See Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997).  If Defendants satisfy this burden, Plaintiff would incur the obligation to "demonstrate with specificity the existence of a disputed material fact.  If the [P]laintiff fails to make such a showing, the affirmative defense bars his claim[s], and the [Defendants are] then entitled to summary judgment as a matter of law." Id.

As previously found in the Report and Recommendation entered August 24, 2012 (Doc. # 33), and adopted by United States District Judge Heaton (Doc. # 38), on September 20, 2012, Plaintiff was advised in a memorandum authored by Defendant OSR Warden's Assistant Bear that Plaintiff's grievance was being returned to him unanswered because Plaintiff had previously been placed on grievance restriction for a twelve-month period beginning October 18, 2010, and Plaintiff did not provide the proper documentation with his grievance as required by ODOC policy OP-090124. Special Report (Doc. # 25), Ex. 32.

On April 26, 2011, Plaintiff was again advised by OSR Warden's Assistant Bear that

---

[2]Because nonexhaustion is an affirmative defense, Defendants' remaining arguments will not be addressed. See Howard v. Waide, 534 F.3d 1227, 1244 (10th Cir. 2008).

a grievance he submitted was being returned unanswered because Plaintiff had failed to comply with the requirements of DOC policy OP-090124 for submission of a grievance while on grievance restriction. Special Report, Ex. 33. Due to his repeated noncompliance with DOC policies, Plaintiff was advised by Mr. Bear that he was "being placed on a twelve-month Grievance Restriction to be effective beginning April 26, 2011." Id.

On September 22, 2011, Plaintiff submitted a grievance to Defendant OSR Warden Rudek in which he alleged that the misconduct charge was the result of retaliatory motives and that he was innocent of the misconduct offense.[3] Special Report, Ex. 27. On September 22, 2011, OSR Warden's Assistant Bear advised Plaintiff in a memorandum that his grievance was being returned "unanswered" because Plaintiff was placed on grievance restriction on April 26, 2011, for a twelve-month period and he did not include the "proper documentation as outlined in [ODOC regulation] OP-090124" with his grievance. Because Plaintiff had submitted that grievance and a second grievance "without following the above-mentioned policy," Mr. Bear advised Plaintiff he was again "being placed on a twelve-month Grievance Restriction to be effective beginning September 22, 2011." Special Report, Ex. 28. Plaintiff did not correct and resubmit the grievance. Plaintiff did not file a grievance regarding the timeliness of his legal mail or file a grievance concerning any of the remaining issues raised in his Complaint.

---

[3]Plaintiff also vaguely asserted in the grievance that Defendant Ellis had "refused to provide appropriate documentation" during investigation of the misconduct, although he did not clearly assert what "documentation" Defendant Ellis failed to provide. Special Report, Ex. 27. This vague statement was not adequate to put prison officials on notice of any other claim asserted in the Complaint.

At the time Plaintiff submitted a grievance to OSR officials on September 22, 2011, he was subject to grievance restrictions imposed by OSR officials under ODOC regulations. Plaintiff was notified by Defendant OSR Warden's Assistant Bear, that his grievance was returned to Plaintiff unanswered because of Plaintiff's noncompliance with the grievance restriction regulations.

Plaintiff began the administrative review process for his claim that the misconduct charge was fabricated due to retaliatory motives. However, Plaintiff did not complete the administrative review process required for ODOC inmates. Plaintiff submitted a grievance to OSR Warden Rudek, and the grievance was returned to him unanswered with the advice that the grievance did not comply with ODOC's grievance restriction policy. See Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010)(recognizing that ODOC's four-step administrative grievance procedure "expressly grants the warden the power to return the grievance unanswered for proper completion when a prisoner's grievance contains a procedural defect")(quotation omitted). Rather than correct the deficiencies in the grievance after he received notice the grievance was insufficient, Plaintiff appealed to the ARA. The ARA returned the grievance appeal unanswered because Plaintiff had improperly attempted to appeal a non-response to his grievance.

"An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). The grievance process established by ODOC required Plaintiff to comply with each step of the grievance process

and the policy's additional grievance-restriction requirements. "Once notified of deficiencies at the formal grievance stage, [Plaintiff] chose not to avail himself of the opportunity to cure them," and he "may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them." Thomas v. Parker, 609 F.3d 1114, 1118 (10th Cir. 2010)(quotation omitted), cert. denied, __ U.S. __, 131 S.Ct. 1691 (2011).

Additionally, Plaintiff did not submit any grievances with respect to his remaining claims asserted in his Complaint. A prison's regulations define the steps a prisoner must take to exhaust administrative remedies, and a prisoner "may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." Little, 607 F.3d at 1249. Because Plaintiff has failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) with respect to any of the claims asserted in his Complaint, Defendants Bethea, Dennis, Ellis, and Lee's Motion for Summary Judgment on this ground should be granted.[4]

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants Bethea, Dennis, Ellis, and Lee's Motion for Summary Judgment (Doc. # 35) be GRANTED and that judgment issue in favor of Defendants Bethea, Dennis, Ellis, and Lee and against the

---

[4]As previously found in the Report and Recommendation, the Court should find that it is not necessary to reach the issue of whether the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994), and its progeny are applicable to Plaintiff's challenge to the validity of his disciplinary conviction because the uncontroverted evidence shows Plaintiff has failed to exhaust available administrative remedies concerning any of the claims asserted in the Complaint.

Plaintiff.  Plaintiff is advised of the right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by _____October 18[th]_____, 2012, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 72.  The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States,</u> 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___28[th]___ day of ___September___, 2012.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE